FILED

2009 Nov-19  PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **VALERIA J. JACKSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 08-S-590-S** |
| | ) | |
| **BIRMINGHAM BOARD OF** | ) | |
| **EDUCATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Valeria Jackson brought this action pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, alleging that defendant, the Birmingham Board of Education, discriminated against her on the basis of race.  The case presently is before the court on defendant's motion for summary judgment.[1]  Upon consideration, and for the following reasons, the motion will be granted.

## I.  STANDARDS OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

---

[1] Doc. no. 20.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[2]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

---

[2] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).

*See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking

"whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  SUMMARY OF FACTS AND PROCEDURAL HISTORY

Plaintiff Valeria Jackson, an African American female, was employed by the

Birmingham Board of Education from 1990 until 2006.[3]  She was initially hired to

teach third grade at Whatley Elementary School ("Whatley"), but instead spent her

first three years working as a first grade teacher and coordinator of the "At Risk

program" at Whatley.[4]  In 1993, Ms. Jackson became a "Title I resource teacher."[5]

Such teachers are intended to provide support with the course of study and student

testing, and are utilized when and where necessary to support classroom instruction

and activities.[6]

During the Summer of 2000, Dr. Michael Wilson, a Caucasian male, became

the principal at Whatley.[7]  Plaintiff then was managing a "writing-to-read lab,"

---

[3] *See* doc. no. 22 (Defendant's Evidentiary Materials in Support of Motion for Summary Judgment), Ex. A (Deposition of Valeria Jackson), at 26.

[4] *See id.* at 23-25.

[5] *See id.* at 26.

[6] *See id.* at 29-30, 34; *id.*, Ex. C (Affidavit of Dr. Wilson), ¶ 3.

[7] *See* Affidavit of Dr. Wilson, ¶ 1.

coordinating student testing, working with specific classes to reinforce reading skills, and generally assisting other teachers in the mainstream curriculum classes.[8]

Prior to commencement of the 2004-2005 school year, Dr. Wilson distributed a school handbook to all members of the Whatley faculty.[9]  During one of the required professional development days prior to the beginning of the school year, Dr. Wilson reviewed the entire handbook in detail with the faculty.[10]  According to plaintiff, she did not attend any of the professional development meetings that occurred before the end of September because she was busy with the registration of students for the upcoming school year;  therefore, she was not present when Dr. Wilson discussed the handbook with faculty.[11]

As detailed in the 2004-2005 school handbook, the Birmingham Board of Education required all teachers to perform monitoring duties in the mornings and afternoons.[12]  According to Dr. Wilson, plaintiff was expected to monitor the general area of the fifth grade classrooms in the mornings, beginning at 7:45 a.m., and in the

---

[8] *See id*, ¶ 4.

[9] *See* Affidavit of Dr. Wilson, ¶ 11;  *id.*, Ex. A (Policies and Procedures Manual for Whatley K-8 School).

[10] *See* Affidavit of Dr. Wilson, ¶ 11.

[11] *See* Deposition of Valeria Jackson, at 55-56;  doc. no. 25 (Affidavit of Valeria Jackson), ¶¶ 24-25.

[12] *See* Affidavit of Dr. Wilson, ¶¶ 12-13.

afternoons from the end of classes until 3:15 p.m, throughout the school year.[13]   Dr. Wilson testified that plaintiff frequently did not perform her morning monitoring duties; but, instead, sat in a room until 8:30 a.m.[14]   Similarly, he claims to have witnessed plaintiff leaving school through the gym doors around 2:45 p.m., instead of performing her afternoon monitoring duties.[15]   Plaintiff denies these allegations and claims to have performed her monitoring duties in accordance with Dr. Wilson's directives.[16]

In addition to monitoring duties, all faculty members at Whatley were required to attend faculty meetings that were held on Mondays at 3:15 p.m.[17]   Plaintiff missed most of the mandatory faculty meetings during the 2004-2005 school year.[18]   The sign-in sheets for that school year reflect that plaintiff attended only four of thirteen meetings for which there are records, and that plaintiff had not been excused from the nine meetings that she missed.[19]   Plaintiff claims that she attended faculty meetings whenever she was able, but that her registration duties, her husband's funeral,

---

[13] *See id.*

[14] *See id.*, ¶ 12.

[15] *See id.*, ¶ 13.

[16] *See* Affidavit of Valeria Jackson, ¶¶ 41-45 and 51-53.

[17] *See* Affidavit of Dr. Wilson, ¶ 15; *id.*, Ex. A (Policies and Procedures Manual for Whatley K-8 School).

[18] *See* Affidavit of Dr. Wilson, ¶ 15.

[19] *See id.*, ¶ 22; *id.*, Ex. H (Sign-in sheets).

doctors' appointments, and a broken leg caused her to miss faculty meetings.[20]

When Dr. Wilson attempted to discuss with plaintiff her frequent absences from faculty meetings, she allegedly told him that she was "not required" to attend.[21] Dr. Wilson wrote plaintiff a letter on November 3, 2004, addressing her absences from faculty meetings, and her failure to cover a sixth grade class that she had been requested to teach.[22]  On the same day, Dr. Wilson gave to plaintiff a document entitled "Performance Evaluation," which noted her failure to regularly attend faculty meetings.[23]

Five days later, Dr. Wilson gave plaintiff another letter, reiterating the items of concern addressed in his November 3rd letter, and noting that plaintiff had missed yet another faculty meeting on November 8th.[24]

On January 25, 2005, Dr. Wilson had a conversation with plaintiff regarding his concerns about her performance, which he construed as insubordination and neglect of duty.[25]  The performance issues addressed by Dr. Wilson included plaintiff's failure to attend faculty meetings, her alleged failure to monitor students

---

[20] *See* Affidavit of Valeria Jackson, ¶¶ 70-74.

[21] *See* Affidavit of Dr. Wilson, ¶ 15.

[22] *See id.*, ¶ 17;  *id.*, Ex. B (Letter dated Nov. 3, 2004).

[23] *See id.*, ¶ 17;  *id.*, Ex. C (Performance Evaluation).

[24] *See id.*, ¶ 17;  *id.*, Ex. D (Letter dated Nov. 8, 2004).

[25] *See id.*, ¶ 19.

in the mornings, and her alleged early departures from campus .[26]  Dr. Wilson also informed plaintiff that he was concerned about finding her asleep in a classroom full of students on January 21, 2005.[27]  Plaintiff claims that she was not asleep when Dr. Wilson came into the classroom.[28]  She alleges that she was teaching mathematics to students at the blackboard.[29]  According to both Dr. Wilson and Ms. Morris, who served as an assistant secretary for Whatley that school year, plaintiff raised her voice during the January 25th meeting with Dr. Wilson, and began screaming that she was not required to attend faculty meeting or to perform monitoring duties in the morning or afternoon.[30]  Plaintiff denies having screamed at Dr. Wilson.[31]

Dr. Wilson wrote a letter to plaintiff for the purpose of memorializing the issues discussed at their conference on January 25, 2005, but plaintiff refused to accept the letter.[32]  On February 12, 2005, Dr. Wilson attempted to deliver to plaintiff a document entitled "Whatley K-8 Early Warning Critique," in which he noted that

---

[26] *See id.*

[27] *See id.*

[28] *See* Deposition of Valeria Jackson, at 112-113.

[29] *See id.*

[30] *See* Affidavit of Dr. Wilson, ¶ 19;  doc. no. 22 (Defendant's Evidentiary Materials in Support of Motion for Summary Judgment), Ex. D (Affidavit of Sharonda Morris), ¶ 2.

[31] *See* Affidavit of Valeria Jackson, ¶¶ 61-62.

[32] *See* Affidavit of Dr. Wilson, ¶ 19;  *id.*, Ex. E (Letter dated Jan.25, 2005);  Affidavit of Sharonda Morris, ¶ 2.

plaintiff failed to monitor and supervise students, and refused to follow directives.[33]
Again, plaintiff refused to accept the critique.[34] Dr. Wilson wrote plaintiff another
letter on February 14, 2005, addressing her continued failure to be present at her
assigned location at 7:45 a.m., despite his repeated requests.[35]  Although plaintiff
accepted this letter, she allegedly did not follow its directives.[36]

Finally, on February 25, 2005, Dr. Wilson wrote a letter to Samuetta Drew,
Human Resources Officer for the Birmingham Board of Education, recommending
that plaintiff's employment be terminated due to her insubordination.[37]  Dr. Wayman
Shiver, who then was Superintendent of the school system, recommended the
cancellation of plaintiff's employment contract by a letter addressed to the members
of the Birmingham Board of Education and dated August 3, 2005, in accordance with
the provisions of the Alabama Teacher Tenure Act.[38]  *See* Ala. Code § 16-24-9.  The

---

[33] *See* Affidavit of Dr. Wilson, ¶ 20;  *id.*, Ex. F (Early Warning Critique).

[34] *See id.*

[35] *See* Affidavit of Dr. Wilson, ¶ 21;  *id.*, Ex. G (Letter dated Feb. 14, 2005).

[36] *See id.*

[37] *See* Affidavit of Dr. Wilson, ¶ 23;  *id.*, Ex. I (Letter dated Feb. 25, 2005).

[38] *See* doc. no. 22 (Defendant's Evidentiary Materials in Support of Motion for Summary
Judgment), Ex. B (Affidavit of Barbara Allen), ¶ 3.  The Alabama Teacher Tenure Act provides:

> (a) An employment contract with a teacher on continuing service status may
> be cancelled only in the following manner:  The superintendent shall give written
> notice to the employing board and the teacher of the superintendent's intention to
> recommend a cancellation as provided in Section 16-24-8.  Such notice shall state the
> reasons for the proposed cancellation, shall contain a short and plain statement of the
> facts showing that the cancellation is taken for one or more of the reasons listed in

stated reasons for the proposed cancellation were: "neglect of duty, failure to perform duties in a satisfactory manner, insubordination, and other good and just cause."[39] Dr. Shiver also included the following specific facts in support of his recommendation:

> (a)     During the 2004-2005 school year, you failed to attend faculty meetings despite being advised at the commencement of the school year that these meetings were mandatory

---

Section 16-24-8, and shall state the time and place for the board's meeting on the proposed cancellation, which meeting shall be held no less than 20 days and no more than 30 days after the receipt of such notice by the teacher.  The notice shall inform the teacher that in order to request a conference with the board, the teacher shall file a written request with the superintendent within 15 days after the receipt of such notice.  At such conference, which shall be public or private at the discretion of the teacher, the teacher, or his or her representative, shall be afforded the opportunity to speak to the board on matters relevant to such cancellation.  The teacher shall have the right to counsel and to have a court reporter record his or her statement, both at the expense of the teacher.  Thereafter, the board shall determine whether such cancellation shall be effectuated.

(b) Regardless of whether or not the employee elects to have a conference with the employing board, if the board votes to cancel the teacher's contract, the superintendent shall give notice to the teacher of the board's action by providing notice by personal service, by United States Postal Service registered or certified mail with postage paid thereon to the teacher's last known address, or by private mail carrier for overnight delivery, signature required, with postage paid thereon to the teacher's last known address within 10 days of the board's action.  Such notice shall be in writing and shall inform the teacher of the right to contest the board's decision by filing with the superintendent a written notice of contest of the action within 15 days of the receipt of the notice.  Such contest shall be taken by filing a written notice of contest with the superintendent within 15 days after receipt of the notice of the decision of the employing board.  If the contest is not timely taken, the board's decision shall be final.  No cancellation shall be effected until the time for filing notice of contest has expired and, if notice of contest is filed, not until the hearing officer has issued an opinion.

Ala. Code § 16-24-9 (1975).

[39] *Id.*, Ex. B (Recommendation of Dr. Shiver).

(b)    In November of 2004, you were advised by your Principal, Dr. Michael Wilson, that you needed to attend all faculty meetings.

(c)    On or about November 3, 2004, you failed to cover a 6th grade class as requested by your Principal, Dr. Michael Wilson. Specifically, you advised your Principal that you were not a substitute teacher.

(d)    In January 2005, you failed to attend faculty meetings.

(e)    In January 2005, you failed to monitor students in the afternoon as requested by your Principal, Dr. Michael Wilson.

(f)    In January 2005, you failed to monitor students in the morning as requested by your Principal, Dr. Michael Wilson.

(g)    You have raised your voice at your Principal, Dr. Michael Wilson.  In January 2005, you screamed at Dr. Wilson and told him that you did not have to attend faculty meetings.

(h)    On or about Friday, January 21, 2005, your Principal, Dr. Michael Wilson, found you asleep with a room full of students

(i)    In February 2005, you failed to monitor students in the morning as requested by your principal, Dr. Michael Wilson.

(j)    On or about February 14, 2005, you received a Warning Critique for the following:  failure to monitor; refusal to obey directives and failure to supervise.[40]

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on November 14, 2005, approximately three months after she received notice from Superintendent Shiver that he was

---

[40] *Id.*

10

recommending the termination of her employment.[41]  In that charge, plaintiff alleged

that she "was subjected to adverse terms and conditions of employment" because of

her race.[42]  She explained:

> I was informed that I was being placed on leave in my position of
> Resource Teacher because I was not performing certain duties I had
> been assigned such as monitoring the hall and failing to attend certain
> faculty meetings.  Others who failed to attend faculty meetings were not
> placed on leave as I have been.  I deny that I failed to perform my
> monitoring duties.[43]

On March 29, 2006, the Birmingham Board of Education held a special

meeting to hear evidence from the administration and plaintiff relating to the

proposed termination.[44]  The administration presented evidence to the Board in

support of Dr. Shiver's recommendation to cancel plaintiff's employment contract,

and plaintiff's legal counsel addressed the Board on Ms. Jackson's behalf.[45]  A

majority of the Board upheld Dr. Shiver's recommendation to cancel plaintiff's

---

[41] *See* Deposition of Valeria Jackson, Ex. 15 (EEOC Charge 130-2006-00792).

[42] In her first charge of discrimination filed with the EEOC, plaintiff claimed that she was discriminated against on the basis of her race, *Native American*.  *Id.*  In her second charge of discrimination filed with the EEOC, described in more detail, *infra*, plaintiff claimed that she was discriminated against on the basis of her race, *African American*.  Plaintiff's claims in the instant case are premised on discrimination on the basis of her race, *African American*.  In her complaint, plaintiff alleges that she is an *African American* female.  *See* doc. no. 1.  Although neither party provides any explanation for the discrepancy with regard to plaintiff's race, the fact is not necessary to the resolution of the motion before the court.

[43] *See* Deposition of Valeria Jackson, Ex. 15 (EEOC Charge 130-2006-00792).

[44] *See* Affidavit of Barbara Allen, ¶ 4;  Alabama Teacher Tenure Act, Ala. Code § 16-24-9, *supra* note 38.

[45] *See id.*

employment contract.[46]

    Plaintiff subsequently exercised her right to appeal the Board's decision under the Alabama Teacher Tenure Act by requesting and receiving a *de novo* hearing before an arbitrator.[47]   The parties selected a neutral arbitrator from the Federal Mediation and Conciliation Service to preside over plaintiff's termination hearing, which was held on August 18, 2006.[48]   A court reporter was present and plaintiff was represented by legal counsel.   She was given the opportunity to present testimony and

---

[46] *See* Affidavit of Barbara Allen, ¶ 4, Ex. C (Minutes from Employee Conference).

[47]*See* Deposition of Valeria Jackson, at 134, 151-53.  With regard to the right to contest a decision of the Board, the Alabama Teacher Tenure Act provides:

> If a teacher should timely file a contest from a decision as provided in this article, the employing board and the teacher shall, within seven days of such filing, either (1) mutually agree upon a person to hear the teacher's contest, or (2) submit a joint *request for a panel of arbitrators to the Federal Mediation and Conciliation Services' Office of Arbitration Services (FMCS)*. The joint request shall specify that the parties prefer a hearing officer who is experienced in employment law. Thereafter, FMCS shall submit to each party an identical list of names of persons chosen to serve as a hearing officer in such matter. Each party shall have 10 days from the date of receipt of the list to strike any name to which it objects, number the remaining names in the order of preference, and return the list to FMCS. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, FMCS shall invite the acceptance of a hearing officer to serve. If the parties fail to agree upon any of the persons named, if those named decline, or if for any other reason the appointment cannot be made from the submitted lists, FMCS shall make the appointment from among other members of the panel. FMCS will formally appoint the hearing officer, who shall be known for purposes of this article as the "hearing officer."

Ala. Code §16-24-20(b) (1975) (emphasis supplied).

[48] *See* Deposition of Valeria Jackson, at 151-53;  Ala. Code § 16-24-20 (1975).

evidence, and to cross-examine the Board's witnesses.[49]

On October 6, 2009, before the arbitrator issued his opinion, the EEOC dismissed plaintiff's charge of discrimination and issued a notice of her right to sue, stating that the Commission "was unable to conclude that the information obtained establishes a violation of the statutes."[50]

On October 18, 2006, the arbitrator issued an opinion in which he determined that plaintiff's termination was "justified based on reasonable and substantial evidence in the record."[51]   The arbitrator found that "[t]here is no question that Jackson engaged in the conduct described in detail by Principal Wilson and as set forth in his various letters and warnings to her," and characterized her conduct as "habitual."[52]   He added that "[h]er continual negative attitude and belligerency also speak to her obvious intent to disobey."[53]

Plaintiff then filed a notice of appeal to the Alabama Court of Civil Appeals, seeking review of the arbitrator's decision.[54]   After receiving briefs from plaintiff and

---

[49] *See id.*

[50] *See id.*, Ex. 16 (EEOC Dismissal and Notice of Rights Letter).

[51] *Id.*, Ex. 17 (Hearing Officer's Decision).

[52] *Id.* at 15-18.

[53] *Id.*

[54] *See* Deposition of Valeria Jackson, at 155-56.

13

the Board addressing the issues required by Alabama Code § 16-24-10(b),[55] the Court of Civil Appeals refused plaintiff's appeal, finding no special or important reasons for granting it.[56]   The Court of Civil Appeals filed its Certificate of Judgment on January 23, 2007.[57]

Nearly three months later, on April 17, 2007, plaintiff filed a second charge of race discrimination with the EEOC.[58]   She alleged that:

---

[55] The provision of the Alabama Teacher Tenure Act cited in text provides, in pertinent part, that:

> All appeals of a final decision of the hearing officer shall lie with the Alabama Court of Civil Appeals. An appeal by either party shall be perfected by filing a written notice of appeal with the Clerk of the Court of Civil Appeals within 21 days after the receipt of the final written decision of the hearing officer. Failure to file a timely notice of appeal shall render the decision of the hearing officer final, in which case the employing board shall take possession of the record of the hearing and shall maintain such record for a period of three years. The Court of Civil Appeals shall have discretion to refuse to hear appeals of final decisions of a hearing officer pursuant to this article. Review by the Court of Civil Appeals pursuant to this article is not a matter of right, but of judicial discretion, and *an appeal may be granted only when the court determines there are special and important reasons for granting the appeal*. Within 30 days after an appeal is granted, the hearing officer shall transmit the record to the clerk, with the appealing party bearing the costs associated with the preparation and transmission of the record and transcript of the hearing. The decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of this article.

Ala. Code § 16-24-10(b) (1975) (emphasis supplied).

[56] *See* doc. no. 22 (Defendant's Evidentiary Materials in Support of Motion for Summary Judgment), Ex. E (Notice from Alabama Court of Civil Appeals dated Nov. 13, 2006); *id.*, Ex. F (Notice from Alabama Court of Civil Appeals dated Dec. 12, 2006); *id.*, Ex. G (Notice from Alabama Court of Civil Appeals dated January 23, 2007).

[57] *See id.*, Ex. H (Certificate of Judgment).

[58] *See* Deposition of Valeria Jackson, Ex. 18 (EEOC Charge 420-2007-02587).

14

> On November 1, 2006, I was discharged.  Other teachers who have been accused of failing to follow the instructions of the principal who have not filed charges of employment discrimination, have not been discharged as I was.
>
> I was informed that I was discharged for failing to follow the instructions of the principal.[59]

The EEOC dismissed plaintiff's second charge and issued a notice of her right to sue on January 4, 2008, again stating that the EEOC "was unable to conclude that the information obtained establishes a violation of the statutes."[60]  Plaintiff filed this action three months later, on April 4, 2008.[61]

## III.  DISCUSSION

**A.    Plaintiff's Title VII Claim:** *exhaustion of administrative prerequisites*

A plaintiff must satisfy a number of administrative prerequisites before filing a suit based upon Title VII.  *See Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999).  Foremost among these is the requirement that a charge of discrimination be submitted to the Equal Employment Opportunity Commission "within one hundred and eighty days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).

All claims based upon events occurring more than 180 days prior to the filing

---

[59] *Id.*

[60] *See* Deposition of Valeria Jackson, Ex. 19 (EEOC Dismissal and Notice of Rights Letter).

[61] *See* doc. no. 1 (Complaint).

of a plaintiff's EEOC charge are due to be dismissed as untimely, unless the plaintiff can demonstrate *either* that the discriminatory character of the tardy claims was not readily and reasonably apparent on the date they occurred, *or that* the otherwise time-barred claims are substantially related to a timely-filed claim.  *See, e.g.*, *Miranda v. B & B Cash Grocery Store, Inc*., 975 F.2d 1518, 1531 (11th Cir. 1992) ("Precedent in this circuit and the former Fifth Circuit has established that the limitations period is tolled 'until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for [her] rights.'") (quoting *Cocke v. Merrill Lynch & Co.*, 817 F.2d 1559 (11th Cir. 1987)); *Roberts v. Gadsden Memorial Hospital,* 835 F.2d 793, 799-800 (11th Cir.) ("It is only when a substantial nexus exists between a timely-filed claim and an otherwise time-barred claim that they may be viewed as constituting a single violation, part of which falls within the limitations period."), *modified on reh'g*, 850 F.2d 1549 (11th Cir. 1988).

If a timely charge is filed and the EEOC issues a right-to-sue letter following its investigation, the charging party has 90 days to commence a civil action against the respondent named in the charge.  *See* 42 U.S.C. § 2000e-5(f)(1).  *See also Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149 (1984) (*per curiam*) (affirming dismissal of Title VII claim because of failure to file a complaint meeting the requirements of Fed. R. Civ. P. 8(a)(2) within 90 days of receipt of right-to-sue

letter). *Cf. Leonard v. Rumsfeld*, 146 F. Supp. 2d 1227, 1239 (M.D. Ala.) (dismissing Federal employee's Title VII claim for failure to file suit within 90 days of receipt of notice of final agency action, as required by 42 U.S.C. § 2000e-16), *aff'd* 29 Fed. Appx. 575 (11th Cir. 2001) (Table, No. 01-13847).

Once the issue of administrative exhaustion is raised by a defendant, it is the plaintiff who bears the burden of proving that the administrative prerequisite was satisfied.

> [A] plaintiff must generally allege in his complaint that "all conditions precedent to the institution of the lawsuit have been fulfilled." If the defendant doubts the veracity of plaintiff's allegation, in whole or in part, then the defendant may deny "specifically and with particularity" that the preconditions have not been fulfilled. The plaintiff then bears the burden of proving that the conditions precedent, which the defendant has specifically joined in issue, have been satisfied.

*Jackson v. Seaboard Coast Line Railroad Company*, 678 F.2d 992, 1010 (11th Cir. 1982) (quoting Fed. R. Civ. P. 9(c)) (other citations omitted).

### 1.    Plaintiff's first EEOC charge (No. 130-2006-00792)

Plaintiff's first EEOC charge was filed on November 14, 2005, approximately three months after she received notice from Superintendent, Wayman Shiver that he was recommending her termination to the Board.[62]  The EEOC dismissed that charge

---

[62] *See* Deposition of Valeria Jackson, Ex. 15 (EEOC Charge 130-2006-00792).

and issued a notice of right to sue on October 6, 2006,[63] thereby informing plaintiff that any lawsuit based upon her charge of discrimination had to be filed within 90 days of her receipt of the EEOC notice.[64]  In order for plaintiff to have stated a viable Title VII claim for the matters asserted in her first charge of discrimination, she would have been required to file a lawsuit on or before January 4, 2007.  She did not file the instant action until April 4, 2008, however, some fifteen months later.[65]  Plaintiff provides no argument with regard to her failure to file a lawsuit within 90 days of receipt of her notice of right to sue.  Accordingly, plaintiff's Title VII claim relating to the claims embodied in Charge Number 130-2006-00792 are untimely and will be dismissed.

### 2.    Plaintiff's second EEOC charge (No. 420-2007-02587)

Plaintiff filed a second charge of discrimination with the EEOC on April 17, 2007.[66]  Defendant argues that plaintiff's Title VII claim related to this charge is due to be dismissed because the charge was filed more than 180 days after plaintiff's termination.

In this charge, plaintiff alleged that she had been discharged by her employer

---

[63] *Id.*, Ex. 16 (EEOC Dismissal and Notice of Rights Letter).

[64] *Id.*

[65] See doc. no. 1.

[66] *See* Deposition of Valeria Jackson, Ex. 18 (EEOC Charge 420-2007-02587).

on November 1, 2006.[67]  However, that was not true;  plaintiff's termination by the Birmingham Board of Education actually had occurred more than seven months earlier, on March 29, 2006, and she was informed of that fact on the following day.[68] Attempting to explain this discrepancy, plaintiff argues that she "appealed her termination to the Alabama Court of Civil Appeals, and waited until she received an opinion from the same entity before filing her second EEOC charge."[69]  Plaintiff claims that "the second EEOC charge was completed by the EEOC, and the EEOC put on Ms. Jackson's charge form that the last act of discrimination was on November 1, 2006.  Ms. Jackson did not know how to fill out an EEOC charge and relied on the EEOC to act on her behalf."[70]  Even so, plaintiff does not explain the significance of the November 1, 2006 date, nor does she provide any evidence that the EEOC advised her that she should not file a charge of discrimination until the conclusion of her appeal process in the state court system.

The Supreme Court held in *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980), that the 180 day period for filing an EEOC charge of discrimination

---

[67] *Id.*

[68] *See* Affidavit of Barbara Allen, ¶ 4, Ex. C (Minutes from Employee Conference).  As discussed in text *infra*, the Birmingham Board of Education voted to sustain the superintendent's recommendation that plaintiff's employment be terminated on March 29, 2006, and written notice of that decision was promulgated the following day.

[69] Doc. no. 24 (Plaintiff's Response in Opposition to Motion for Summary Judgment), at 18.

[70] *Id.* at 18-19.

commenced on the date that an adverse employment decision was made *and communicated to the plaintiff*, even though one of the effects of the decision, the eventual loss of employment, did not occur until a later date.  Here, the Birmingham Board of Education voted to terminate plaintiff's employment on March 29, 2006,[71] and in a letter dated the following day, the Board gave plaintiff formal notice of its decision to uphold Dr. Shiver's recommendation to cancel her employment contract.[72] Accordingly, plaintiff was required to file her EEOC charge related to that termination within 180 days of March 30, 2006.  Plaintiff waited, however, until April 17, 2007 — more than one year after the Board's decision to terminate her employment contract — to file her second EEOC charge, well beyond the 180 day limitation required by Title VII.

Plaintiff argues that the filing deadline should have been equitably tolled pending the outcome of her appeal in the Alabama Court of Civil Appeals.[73]  This argument lacks merit.  "Under equitable tolling, Title VII's statute of limitations period does not start to run until a plaintiff knew or reasonably should have known that she was discriminated against."  *Carter v. West Publishing Co.*, 225 F.3d 1258,

---

[71] *See* Affidavit of Barbara Allen, ¶ 4, Ex. C (Minutes from Employee Conference).

[72] *See* Deposition of Valeria Jackson, Ex. 13 (Notice of Board's Decision from Dr. Shiver)

[73] Doc. no. 24 (Plaintiff's Response in Opposition to Motion for Summary Judgment), at 19-20.

1265-66 (11th Cir. 2000).  Here, plaintiff knew of the alleged discrimination as early as November 14, 2005, the date on which plaintiff filed her first EEOC charge after receiving notice from Superintendent Shiver that he was recommending termination to the Board of Education.

Furthermore, it is well settled that a plaintiff's appeal of her termination does not toll the limitations period.  *See Ricks*, 449 U.S. at 261 (holding that "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period");  *Stafford v. Muscogee County Board of Education*, 688 F.2d 1383, 1388 (11th Cir. 1982) (holding that a plaintiff's act of filing of grievance with employer and Title VI claim with the Department of Health, Education, and Welfare did not toll 180 day limitations period for filing Title VII charge of discrimination).  Therefore, plaintiff's Title VII claims relating to Charge Number 420-2007-02587 also are untimely and will be dismissed.

## B.   Plaintiff's Section 1981 Claim

In her complaint, plaintiff asserts a claim pursuant to 42 U.S.C. § 1981.  However, "[s]ection 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 1981 violations must be brought pursuant to § 1983."  *Baker v. Birmingham Board of Education*, 531 F.3d 1336, 1337 (11th Cir. 2008) (citing *Butts v. County of Volusia*, 222 F.3d 891, 892-94 (11th Cir.

2000). *See Jett v. Dallas Independent School District*, 491 U.S. 701, 735 (1989) ("the express 'action at law' provided by 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.").

In her response to defendant's motion for summary judgment on plaintiff's section 1981 claim, plaintiff concedes that "[d]efendant's argument regarding plaintiff's § 1981 claims is well taken, and if accepted by this court, [the claim is] due to be dismissed." Accordingly, plaintiff's section 1981 claim also will be dismissed.

## IV.  CONCLUSION AND ORDER

For all of the foregoing reasons, defendant's motion for summary judgment is due to be, and it hereby is, GRANTED.  All of plaintiff's claims are DISMISSED with prejudice.  Costs are taxed to plaintiff.  The Clerk is directed to close this file.

DONE and ORDERED this 19th day of November, 2009.

_____
United States District Judge

22